**STATE on Complaint of SHAFFER, Extrx., Complainant-Appellant, v. KUTHY, Defendant-Appellee**

Ohio Appeals, Seventh District, Mahoning County.

No. 2992.   Decided Jan. 4, 1945.

Mitchell and Mitchell, Youngstown, and Earl R. Lewis, St. Clairsville, for complainant-appellant.

Harrington, Huxley & Smith, Youngstown, for defendant-appellee.

## OPINION

By PHILLIPS, P. J.

Bertha E. Shaffer, Executrix of the estate of John W. Shaffer, filed a complaint in the probate court under the provisions of §§10506-67 to 73 inclusive GC, in which she alleged "that she had good cause to suspect" that defendant had concealed, embezzled, or conveyed away "goods, chattels and other assets" belonging to decedent's estate.

"A writ of citation" was issued "against" defendant upon such complaint and hearings were had thereon. The judge of the probate court found defendant "not guilty" as charged therein, and that she had title to certificate CL-14411 representing ownership of 100 shares of the common stock of the Eaton Manufacturing Company and certificates NPH-1175

and NPH-1176 each representing ownership of 100 shares of preferred stock of Wheling Steel Corporation "by reason of a valid gift inter vivos from the said John W. Shaffer, to her" prior to June 1, 1942, and September first of the same year respectively.

From the judgment of the probate court entered upon that finding the executrix appealed to this court on questions of law and fact. Defendant's motion to dismiss the appeal as such was sustained. The fact feature thereof was dismissed and the case was argued and submitted to us and was retained, and will be determined by us, as an appeal on questions of law.

In their brief counsel for executrix said that "the present case revolves, and must be decided, upon the testimony of the appellee, Mary Kuthy, herself. All the other testimony is secondary in character;" that "although the assignments of error are nine in number, the court will note that these all reduce themselves to a single question, namely, whether or not the decedent made a valid gift inter vivos to the defendant." As suggested the judge of the probate court decided that question in the affirmative.

There is evidence that for many years prior to decedent's death on December 3, 1942, defendant was his full time "confidential secretary", and subsequently his part time "confidential secretary"; that during all of that time he entrusted various unendorsed certificates of stock in divers corporations to her, all of which she placed in her safe deposit box upon his request and with his knowledge and consent, and which she returned to him upon demand; that neither decedent or defendant made any gift tax return of such stock certificates; that defendant lost certificate NY-62510 representing 100 shares of stock in the Eaton Manufacturing Company standing in the name of Hornblower and Weeks, and on April 16, 1942, advised the transfer agent for such stock that he had found that certificate; that the value of the stock represented by certificate NY-62510 at that time was approximately $20,000.00; that subsequently he had that certificate transferred to his name; that decedent told executrix "that he had lost two Wheeling Steel certificates", and executrix and her witness Johnson that he had "lost stocks" of a value of approximately $17,000.00 to $20,000.00.

It was stipulated by counsel for the respective parties in the probate court "that the typewriting on the back of the Eaton Manufacturing Certificate No. CL-14411 containing the name of 'Mary Kuthy, 302 Erie Street, Hubbard, Ohio,' was

placed thereon subsequent to the death of Dr. Shaffer by counsel for Miss Kuthy," and it was frankly and voluntarily stated by counsel for defendant, during argument before this court, that they had decedent's signature, appearing on the three certificates in dispute, guaranteed at the same time. The bill of exceptions reveals that defendant's name was not inserted in the certificates representing shares of stock in the Wheeling Steel Corporation.

Witness Massie testified that decedent told him "that he was going to fix it so Mary (defendant), he always spoke of her as Mary, so Mary and Harry and I would have a third apiece" in the Shaffer Gas Company; that on September 20, 1942, decedent told him "that he had lost about $20,000.00 worth of stock or mislaid it some place;" that "he didn't know the numbers of them;" that "it was just like cash;" that on a later occasion he referred to the loss of such stock again and told him in October, 1942, that he had not found it; and that deceased willed him $2,000.00.

Executrix testified that decedent had approximately 900 shares of stock in Eaton Manufacturing Company and 600 shares of stock in Wheeling Steel Corporation, and in referring to the stocks which decedent told her he had lost said "I knew it was what he had gotten out of the bank, he had it up as collateral" for a loan at the Mahoning National Bank.

There is undisputed evidence that the only other property which the executrix originally claimed defendant concealed, embezzled or carried away were a typewriter and five cans of pineapple juice, which the undisputed evidence reveals belonged to defendant, and two rugs which were the property of decedent; that defendant admited having all of that property in her possession; that she took such property because some of it was hers, and because one rug was laying on the floor in the office of the Shaffer Gas Company in Conneaut, which annoyed decedent, with whom she had some conversation concerning it, and who in response to her question "what shall I do with it?" answered "I don't care what you do with it but get it out of the way;" that she interpreted that answer to mean that "Dr. Shaffer did not want that rug anymore," and she took it; that under those circumstances "if the rugs don't belong to" her she didn't "want to keep them;" that she would return the rugs to Mrs. Shaffer "if she wants them."

The bill of exceptions discloses that at that point in the examination of defendant the executrix interrupted defendant's examination and said with reference to the rugs "I don't

want them. They were mine, I paid for them both but don't want them. She may have them both;" and that defendant acknowledged the gift by saying "thank you."

Obviously as the judge of the probate court found under the state of the record defendant cannot be charged with concealing, embezzling or carrying away the typewriter, fruit juice or rugs.

Defendant's uncontradicted testimony on direct and cross-examination and her documentary evidence discloses that she did some work for Shaffer Gas Company but decedent paid her from his personal funds; that she accompanied deceased on trips "business, pleasure" and "otherwise;" that deceased gave her the certificates for the shares of stock in Eaton Manufacturing Company "the first part of May, 1942," "at the office of Shaffer Gas Company in Conneaut, Ohio," "said it was" hers, that "he just gave it to" her, "gave it to" her "as a gift," "probably for" her "loyalty to him" "for the work" she "had been doing for him," but that he did not specify "any service or work that that stock was supposed to compensate her for;" that she didn't "think he gave it to" her "for being secretary to him;" that she never claimed any dividends, but received one dividend, on such stock paid to her by decedent in cash "in the month of May," and didn't know who got the rest; that decedent gave her the certificates for the shares of stock in the Wheeling Steel Corporation "just like the Eaton, just gave it to" her "as a gift," "in August, 1942;" that no dividends were paid on that stock; that "those (certificates) were a gift;" that when he handed all of such certificates to her he called her attention to the fact that they were endorsed in blank and cautioned her "to be careful of" them, "because it (sic) was just like money;" that because of those admonitions she did not ask him to place her name on the certificates as "transferee" and "never thought of transferring them before decedent died" or thereafter, until she "happened to be in the bank" and was "talking to one of the men" "about income tax" and "wondered whether she had to tell about the stocks," "for income tax," whether she "had to declare it or not;" that she did not "make out the tax return or return this stock;" that if "Doctor Shaffer had come to" her "and asked" her to give him back these two certificates she would "have done so," because of "well just the friendship between us, anything he would have given me and would have come to me and asked me to return it, I'd have given it to him, anything."

There is no evidence who received any other dividends

on the Eaton Manufacturing Company stock if any were paid or received, or that decedent reserved the right to collect any such dividends.

Such is the competently admitted evidence upon which we are asked to, but cannot, reverse the judgment of the probate court in this case on the ground that a completed gift inter vivos of the three certificates of stock heretofore named herein was not shown thereby, or on the grounds that such judgment is not sustained by and is contrary to the manifest weight of the evidence or contrary to law.

Executrix contends that the certificates of stock in the Eaton Manufacturing Company and Wheeling Steel Corporation, to which reference is made in the factual statement of this opinion, were the stocks that were deposited at the Mahoning National Bank as collateral, and that they were endorsed in blank for that purpose, and were the certificates which decedent said he lost, and which executrix claims defendant has concealed; that decedent received the dividends on the stock which defendant claims he gave her; that defendant failed to transfer such certificates upon the books of the respective corporations during decedent's lifetime; and that defendant's testimony that she would return the certificates had decedent asked her for them all defeated and impeached any gift or intended gift of such certificates to her.

Unfortunately the note for which any stock certificates of decedent, if pledged, were pledged, as collaterial to the Mahoning National Bank, or such certificates, or any records of that bank relative to such note, loan or certificates, proving or tending to prove the contention of executrix are not in evidence. The bill of exceptions fails to disclose that such records could not be, or any reason why they were not, introduced in evidence. There is no evidence that the disputed certificates were endorsed as collateral for a loan at the Mahoning National Bank except that of executrix. On the contrary counsel for executrix said upon trial: "Yes. I said there were three certificates and that we didn't identify these certificates" as those in dispute, and to repeat there is testimony that decedent did not "know the numbers of" the certificates he lost but never found.

Assuming that such contentions were supported by the evidence by the required degree of proof, still the actions of defendant in failing to, or attempting to, transfer such certificates of stock upon the books of the respective corporations prior to decedent's death and of decedent in collecting most of the dividends, if he did, will not alone defeat the gift of such certificates to defendant.

"Transfer of certificates of stock on the books of a corporation is not requisite to a valid, completed gift of such certificates as between the donor and donee." **Bolles, Appellee, v The Toledo Trust Co., Exr., et al, Appellants, 132 Oh St 21, syllabus 4.**

The provisions of the Uniform Stock Transfer Act (§§8673-1 to 8673-23 GC), to the effect that title to certificates shall pass as of the time of the registration of the transfer, having been inserted for the protection of the corporation, do not alter the above rule." Bolles v Toledo Trust Co., supra.

"The drawing of dividends by the donor from stock, the certificates of which were endorsed or assigned and delivered to the donee, the voting of the stock by the donor at annual meetings, the failure to transfer the stock from the donor's to the donee's name on the books of the corporation during the former's lifetime are not such a retention of control and dominion as will make the gift conditional and incomplete." **20 O. Jur. page 23, section 15.**

See **Ewalt v Ames, 6 Oh Ap 374; McCoy v Gosser, 8 Oh Ap 145,** which are cited in support of this quotation: In the latter case the supreme court overruled a motion to certify.

Now it might have been, but has not been, argued that defendant was not the donee of the disputed certificates at the time of decedent's death, because such certificates were endorsed in blank at that time, and that the quotation from **20 O. Jur. page 23, section 15, supra,** is not applicable to this case.

I believe that had that argument been made it is answered by the provision of §8673-1 GC, which is a part of the Uniform Stock Transfer Act adopted by the State of Ohio, and which as applicable provides as follows:—

"Title to a certificate and to the share represented thereby can be transferred only, (a) by delivery of the certificate indorsed either in blank or to a specified person by the person appearing by the certificate to be the owner of the shares represented thereby, * * *."

Obviously decedent was the person appearing by the certificates to be the owner of the shares represented thereby.

Without further discussion we conclude that the testimony of defendant that she would have given the disputed certificates or "anything" to decedent had he asked for it alone does not impeach the gift of the disputed certificates to her, and we conclude that we cannot uphold the contentions of executrix that the disputed certificates of stock were the stocks that were deposited in the Mahoning National Bank as collateral for a loan made by decedent, and that they were endorsed in blank for that purpose, or were the certificates which decedent said he lost and which executrix claims defendant concealed.

Adopting the view of counsel for executrix that "the present case revolves, and must be decided, upon the testimony of appellee, Mary Kuthy, herself" I am driven to the conclusion that the judgment of the trial court must be affirmed. However, considering all the testimony and carefully weighing all of the evidence in this case if the trial judge, in the discharge of his duty in weighing the evidence, had reached the conclusion that ownership of the three disputed certificates by decedent's estate was established by the required degree of proof, and had entered judgment in favor of executrix upon such a finding, I believe that I might not have been warranted in voting to reverse such a judgment. In fact, it is possible that had this court retained this appeal as one on questions of law and fact, heard this case denova, seen the witnesses and heard them testify as did the trial judge, that upon such evidence I might have found that such certificates were assets of decedent's estate, and upon such a finding, if made, have agreed to enter judgment for executrix, as there is some evidence which supports the contentions of both parties.

However it must be remembered that this case was submitted and argued to, and was retained and is being determined by, this court as an appeal on questions of law.

Upon appeal on questions of law we cannot reverse the judgment of the trial court on the ground that such judgment is against the manifest weight of the evidence, unless it appears from the record that the judgment of that court is so manifestly against the weight of the evidence as to shock the conscience of every member of this court. As the result of carefully reviewing and painstakingly weighing all of the evidence in this case this court cannot reach that conclusion.

Now just a concluding word concerning the oral contention of counsel for executrix that the trial judge erred prejudicially to her in permitting defendant to testify at a continued hearing which counsel was advised was solely for the purpose of argument.

It is observed that counsel for executrix requested and was granted several continuances of the hearing of the complaint; that counsel for defendant finally objected to such continuances, and said "well we'll never get through with this thing if you keep on reserving the right to bring in further testimony;" that the trial judge said at the hearing, concerning which complaint is made, "now I am permitting evidence to be introduced this afternoon on both siles, and giving you the right for a continuance to meet any new evidence that may be introduced, but blanket objection—if you are objecting to her testifying at all I have overruled that and you have your objection."

Without further word, but as the result of a careful consideration of the entire record presented to us in this appeal we conclude that under the conditions presented therein, all of which are well known to the parties and their respective counsel, that the trial judge did not err prejudicially to executrix in this case in the respect under discussion, or any of the other respects claimed by executrix and argued to us.

It follows from what we have said, from the evidence we have quoted, and the law we have cited, we conclude that the judgment of the probate court is not contrary to law and must be and hereby is affirmed.

NICHOLS, J, and CARTER, J, concur in judgment.

## OPINION

By NICHOLS, J.

This matter is submitted on appeal upon questions of law, motion to dismiss the appeal on questions of fact having been heretofore sustained on the ground that the proceeding in the Probate Court of Mahoning county was not one in chancery.

After a careful consideration of all the evidence contained in the bill of exceptions, I am convinced that I could not have arrived at the same conclusion as the Probate Court had the cause been heard de novo here. However, from the record before us, it is clear that the evidence is in conflict upon the sole question of fact, to-wit, were the certificates of stock, of the conceded value of about $17,000.00, a gift absolute from Dr. Shaffer in his lifetime to Mary Kuthy? Unless the decision of the Probate Court is so manifestly against the weight of the evidence as to shock the consciences of every member

of this court, the judgment cannot be reversed on that ground.

I recognize that it was the province of the Probate Court to weigh the testimony of Mary Kuthy in the light of all the circumstances surounding the transaction and that the judge, by reason of his acquaintance with the parties and his observation of Miss Kuthy upon the witness stand, was in a better position to weigh the evidence.. It is quite difficult for me to understand why Dr. Shaffer did not place Mary Kuthy's name in the form of assignment on the back of these certificates if he intended to make a gift of them to her rather than leave the endorsements in blank. Evidently being a man of superior intelligence, he would have appreciated that the position in which Miss Kuthy was placed by the blank endorsements would give rise to grave doubt and suspicions and cast uncalled for reflections upon the relationship of the parties. A man of his high standing and character would not naturally lend himself to such a situation. One who has attained the position of Dr. Shaffer in the community wherein he lived and served during the greater part of his life does not naturally jeopardize that position after attaining the age of seventy-five years.

Many suspicious circumstances surround this transaction. There were no witnesses thereto. Although Dr. Shaffer had placed numerous certificates in Miss Kuthy's possession for safekeeping over a period of years, these were the only certificates endorsed by him in blank. According to the executrix; these certificates had been so endorsed because they had been hypothecated as security for a loan at one of the Youngstown banks. There is, however, no direct evidence to contradict that of Miss Kuthy who testified that the 100 shares of stock of Eaton Manufacturing Company were endorsed and delivered to her by Dr. Shaffer in May, 1942, and the two certificates for 100 shares each of Wheeling Steel Corporation were endorsed and delivered to her in August, 1942. It is significant that as late as October, 1942, Dr. Shaffer was searching for and complaining about having lost certificates of stock of the value of $17,000 to $20,000, this being testified to not only by Mrs. Shaffer but by two apparently disinterested witnesses.

The shares now claimed by Miss Kuthy are the only shares of stock owned by deceased which are not accounted for in the inventory of his estate and are of the value of about $17,-000, thus being so far identified with the shares he complained of having lost. He apparently thought he had lost a certificate for 100 shares of Eaton Manufacturing Company stock as early as April, 1942, at which time he discovered same, but

this does not explain his complaint, made in October, 1942, of the loss of shares valued at $17,000 to $20,000.

Neither Dr. Shaffer nor Miss Kuthy made any gift tax return and Miss Kuthy did not return the shares for taxation after she claims to have been the owner of them. Whatever dividends were paid on the stocks were received by Dr. Shaffer, although it is probable no dividends were paid on Wheeling Steel stock between the date she claims it was given to her and the date of his death in December, 1942. She testifies that a dividend was paid on the Eaton Manufacturing Company stock after it was given to her; that Dr. Shaffer received such dividend but gave the amount in cash to her.

Great stress is laid by counsel for appellant upon the fact that Miss Kuthy testified that she would have given these shares back to Dr. Shaffer if he had asked for them, just as she turned back to him upon his request all other shares which had been placed in her possession for safekeeping. It is argued by counsel for appellant that such testimony absolutely refutes an unconditional gift of the shares to her. However, she explains her testimony in this regard and such explanation must be weighed along with her statement. She denies that she was under any obligation to return these particular shares.

The testimony of Miss Kuthy is not impeached otherwise than by the suspicious circumstances above related. She testifies positively that the stocks were a gift from the doctor to her. She had possession of the stocks at the time of his death; they were endorsed by him in blank; the genuineness of his signature to such endorsements is conceded; she had been his confidential secretary for approximately eighteen years; he evidently believed in her honesty and integrity, of which qualifications he had abundant opportunity to judge; he trusted her to such extent as naturally led the Probate Judge to give considerable weight and credit to her veracity. The relationship between them, although entirely honorable, was of that intimate type frequently existing between persons associated together over a long period of years. He was of advanced age and she much younger than he. Entirely aside from matters of sex, it was quite natural that he had come to depend largely upon her in connection with his business affairs, since Mrs. Shaffer testifies she did not concern herself with such matters.

Although the claimed gift is large, it is but 10% of his total estate. If the judgment of the Probate Court is wrong, at least it must be seen that Dr. Shaffer, by the trust and con-

fidence reposed in Miss Kuthy, is responsible therefor. Absolute certainty was impossible of attainment under the conflicting evidence in the record. I have great confidence in the judicial integrity and accumen of the Probate Judge who heard the complaint, and while I would have arrived at a different conclusion, I cannot say that the decision is so manifestly against the weight of the evidence as to permit or justify reversal. There being no prejudicial error appearing from the record, I concur in the judgment of affirmance.