In re Estate of Stevenson.

(No. 3918—Decided October 4, 1946.)

*Mr. R. W. Kilbourne,* for appellee.
*Mr. C. Russell Younger* and *Mr. Harry L. Margulis,* for appellants.

Miller, J. This is an appeal on questions of law from a judgment of the Probate Court of Franklin county on exceptions, filed to the inventory and ap-

praisement of the estate of Mae Stevenson, deceased, by Everett O. Newman, one of the coexecutors who claimed to be the owner of certain personal property consisting of stocks and bonds which had been included as a part of the inventory and appraisement and a part of the assets of the estate of Mae Stevenson.

The trial court sustained the exceptions and ruled that the exceptor was the owner of the personal property claimed by him and included as a part of the assets in the inventory and appraisement filed in the estate, finding that the property had been the subject matter of a gift by the decedent to the exceptor.

The question in dispute herein is whether the exceptions to the inventory and appraisement shall be sustained. The error assigned is that the finding of the Probate Court is not sustained by the evidence and is contrary to law.

The following facts were stipulated by and between counsel for all the parties and with the approval of the court:

That Mae Stevenson, deceased, during her lifetime rented a safety deposit box at the Huntington National Bank in Columbus, Ohio; that Frank S. Graves was, on or about the 19th day of May, 1945, duly appointed and qualified as guardian of Mae Stevenson; that upon the first examination of the contents of the safety deposit box he found a sealed envelope, upon the face of which was written the following language—"All of the contents of this envelope belongs to Everett O. Newman"—signed "Mae Stevenson"; and that in addition to the writing above set forth on the envelope there was attached to the outside of the envelope a note which reads as follows: "Everett's sister, Mrs. Walker Stansbury, 1309 Holley street, Dayton 10, Ohio. In case of my death turn this over to his sister, above address," signed "Mae Stevenson."

The contents of the envelope were as follows: A number of gold debenture bonds, payable to bearer; certain shares of common stock issued in the name of Mrs. Mae Stevenson and endorsed "Mae Stevenson" in the presence of a witness, not dated and in blank. Attached to those shares was the following: "Everett: if anything happens to me take this to Clark Burt at Vercoe and have him transfer it to you: I am giving it to you now three-sixteen-forty-four," signed "Mae Stevenson."

Also in the envelope there were found three City Service Company bonds payable to bearer. Attached to those bonds was the following: "$300. This is the property of Rose Riley, 143 Woodrow avenue. Everett if I do not need any of this to pay my last bills will you see that Rose gets it; it is the same as money." Signed "Mae Stevenson."

It was stipulated further that Everett O. Newman and Frank S. Graves were authorized by the deceased to enter the safety deposit box; that neither of them ever at any time entered the box for any purpose whatsoever; and that the last entry in the safety deposit box was made by the deceased on or about the 16th day of March, 1944. There were numerous other envelopes found containing stock certificates and personal property with statements designating others as being the owners, but the ownership of which property is not involved in this action.

It was stipulated and agreed further that all writing contained on the envelope and other slips of paper and purporting to be the signatures of Mae Stevenson are her genuine signatures.

Kathleen Preston who was called as a witness testified that Mae Stevenson, deceased, gave to Everett O. Newman on the day prior to the appointment of the guardian, a key to her safety deposit box with instruc-

tions to go "and get what was his out of her lock box."

The trial court held that the record was sufficient to show that there was an intention of Mae Stevenson to give the property under consideration to Mr. Newman and that the giving of the key and acceptance of the same by Mr. Newman constituted a delivery and acceptance. The court points out that had she died before delivering the key to Mr. Newman her whole plan would have had no legal effect.

Perhaps the most extended and comprehensive definition of the necessary elements to constitute a completed gift *inter vivos* is found in the case of *Flanders* v. *Blandy,* 45 Ohio St., 108, 12 N. E., 321, where it is said:

"A gift *inter vivos* has been defined as an immediate, voluntary and gratuitous transfer of his personal property, by one to another. It is essential to its validity that the transfer be executed, for the reason that there being no consideration therefor, no action will lie to enforce it. A gift *inter vivos* has no reference to the future, but goes into immediate and absolute effect. To render the gift complete; there must be an actual delivery of the chattel, so far as the subject is capable of such a delivery, and without such a delivery the title does not pass. If the subject be not capable of actual delivery, there must be some act equivalent to it. 'The necessity of delivery,' says Chancellor Kent, 'has been maintained in every period of the English law.' The donor must part not only with the possession, but with the dominion and control of the property. An intention to give is not a gift, and so long as the gift is left incomplete, a court of equity will not interfere and give effect to it."

"Gifts *inter vivos,* like gifts *causa mortis,* are watched with caution by the courts, and to support them clear and convincing evidence is required." *Flanders* v. *Blandy, supra,* at page 113.

Counsel for appellants refer to the case of *Bolles* v. *Trust Co.,* 132 Ohio St., 21, 4 N. E. (2d), 917, to support their contention. The facts in that case disclose that George A. Bolles and Clara C. Bolles were husband and wife and that they rented a lock box in the name of the corporation which they controlled and to which both had access. The husband left certain securities in the box, and testimony was offered which would establish the fact that he had given those securities to his wife. The evidence disclosed that Mr. Bolles visited the safety box some 49 times between the time of its rental and his death, and that during the same period of time Mrs. Bolles visited it only on two occasions. On pages 28 and 30, the court said:

"The real stumbling block we meet in this case is the matter of delivery. Is there clear and convincing evidence of the delivery of the securities involved, with relinquishment of dominion and control over them? Where is the definite and tangible proof as to how, when and where any such delivery occurred? * * * Certain undisputed evidence in this case is indicative that there was no such delivery, including surrender of dominion, as the law demands. Among the indicia are the facts that the securities were contained in a box to which George A. Bolles had free access and to which he made frequent visits; that they were kept and found in a folder bearing his name or initials; that they stood in his name without endorsement or assignment; that he exercised incidents of ownership in the manipulation of certain of the securities at different periods and that he collected the dividends and interest therefrom and deposited the same to his individual account in the bank."

The facts in that case are different from those in the case at bar in that the donor at no time surrendered complete possession of the safety deposit box to the donee as in this case. One of the requirements to con-

stitute a valid gift is the severance of all control or dominion over the property. In the case at bar we think that the evidence supported the finding of the trial court that Mae Stevenson released all her control over the property when she gave the key to the lock box to Everett O. Newman. The record does not disclose that she was possessed of a duplicate key, and in the absence of such a showing the presumption is that she was not.

We find very similar to the case at bar, *Rule* v. *Fleming,* 85 Ind. App., 487, 152 N. E., 181, where the delivery to the donee by a donor who was about to undergo a serious operation, from which she did not expect to recover and which proved fatal, of her duplicate key to a safe deposit box in a bank taken in the names of the donor and donee, or survivor, was held to be sufficient delivery to constitute a valid gift *causa mortis* of the contents of the box. It was there said that the donor thereby had done all things which were necessary to invest the donee with the right and power to have exclusive possession of the property, and that nothing in this behalf remained to be done after the death of the donor.

In the case of *Braun* v. *Brown,* 14 Cal. (2d), 346, 94 P. (2d), 348, 127 A. L. R., 773, it was held, as reported in paragraphs one and eleven of the headnotes appearing in 127 A. L. R.:

"1. The delivery essential to a gift of the contents of a safe-deposit box may be made by a transfer of the key; and the fact that there is a duplicate key is immaterial where such duplicate is locked in the box."

"11. The fact that one to whom another handed the key of a safe-deposit box with the statement, 'everything in the box belongs to you,' and who retained the key, did not use the key to take possession of the property before the death of the donor twenty days later does not make the gift ineffective for want of acceptance."

Counsel for appellants cite the case of *Gano* v. *Fisk*, 43 Ohio St., 462, 3 N. E., 532, 54 Am. Rep., 819, to support their contention that the delivery of a key to a lock box does not constitute delivery of the contents. We do not believe the facts in that case are similar to those in the case at bar, they being as follows:

"2. G. was a man of advanced age, having a wife and daughters by a first wife, and, by the present wife, a son, with whom he boarded; his property consisted partly of a farm and stock thereon, but mostly of promissory notes of various amounts; before his last sickness he had expressed a desire 'that his children should have his notes and his son should have his farm'; on the morning of the day of his death, and in the presence of a daughter's husband, herself and a sister, G., called the daughter and said to her: 'My notes are in a little box on the bureau there; I want you to take them and divide them equally among you children.' He told her to get the key to the box, and she got the key and tried it in the box, and gave the key to her husband for safe-keeping. After his death intestate, she took the box and did not divide the notes, but returned them to the administrator, and they were appraised and held as part of the estate. In an action by the daughters, claiming for themselves and the son, the notes and their proceeds, as against the administrator and the widow. *Held:* 1. These facts do not show such a delivery as constitutes a valid gift *causa mortis*. 2. These notes and their proceeds are assets of the estate, and the widow is entitled to her proper part thereof."

In discussing the case, the court said, on page 472:

"Was she to collect the money due on the notes, and then divide the proceeds equally among them? If so, the gift was not complete, and no title passed. His death revoked the gift.

"Or was Mrs. Fisk to divide the notes into four equal amounts in value, and then deliver to each child a definite parcel of these thirty-eight notes? This was never done, and these notes, it seems, could not be so divided. So there never was a separation of the notes made so as to vest in each donee an ownership in par-·ticular notes.

"But, had the notes been so that they could be equally divided, how could the doubtful or worthless notes be disposed of? Who would take them? Or should she disregard them? Gano did not hand the notes to Mrs. Fisk, and say, 'I give these notes to you four children'; neither did he say, 'I give these notes to you children equally, one-fourth part to each.' Something more must be done to complete the gift.''

The appellants are contending further that the key was given to Mr. Newman after the application for a guardian had been made and on the day before the actual appointment, and that since Newman had knowledge of the pendency of the guardianship, the gift was invalid under Section 10507-4, General Code. That section, after providing for the service to be made on certain individuals in the matter of the appointment of a guardian, provides:

"From the service of such notice until the hearing, as to all persons having notice of such proceeding, no sale, gift, conveyance or encumbrance shall be valid, of the property of such incompetent, habitual drunkard, idiot, imbecile, lunatic or confined person."

It is true that section would be a bar to a valid gift, provided Mr. Newman had knowledge of the pendency of the proceeding. We have examined the record carefully and find that Newman was told by Mr. Graves of the application being made for the appointment of a guardian, but the record is not definite as to when he acquired that information. If it was acquired after the presentation of the key, then the section would not

apply. Since that information is not contained in the record, the section cannot be further considered.

We are in full accord with the findings of fact and conclusions of law as announced in the decision of the trial court, and the judgment is affirmed.

*Judgment affirmed.*

HORNBECK, P. J., and WISEMAN, J., concur.