TILTON, IV, ET AL., EXRS., APPELLANTS, *v.* MULLEN, APPELLEE.*

(No. 1066—Decided May 25, 1956.)

*Messrs. Parrish, Beeler, Egbert & Bartels,* for appellants.
*Mr. Harry T. Wilks,* for appellee.

MATTHEWS, J.   The issue raised by this appeal from the Probate Court is whether the contents of safe deposit box 41 in the First National Bank of Okeana, Ohio, belong to the estate of Blanche T. Kohl, deceased, or to May E. Mullen.   The Probate Court held that the contents belonged to May E. Mullen.   The contents of the box consisted of unendorsed certificates of stock in five corporations and four United States government "E" bonds for $100 each.   The appraised value of the stock was $15,228, and that of the bonds was $413.   The appraised value of the whole estate was $45,322.44.   The estate, other than the contents of the safe deposit box, consisted of a savings account of $27,260.19 in the First National Bank of Okeana, a checking account of $1,636.38 in the same bank, and a savings account of $784.87 in the Southern Ohio National Bank of Cincinnati, Ohio.

All the certificates of stock recited that Blanche T. Kohl was the owner of the stock in the respective corporations.

Blanche T. Kohl died on February 20, 1955.   Her husband,

*Motion to certify the record overruled, November 21, 1956.   Appeal dismissed 165 Ohio St., 599.

who was the original renter of this safe deposit box, died in 1950. At that time, Mrs. Kohl was an invalid, and, as she had no close relatives, it was arranged that she should live with May E. Mullen, who was a close friend. From that time on, Mrs. Kohl continued to live in the home of Mrs. Mullen and, apparently, became progressively worse until her death and, as a result, required more personal aid. It is admitted that Mrs. Mullen was paid weekly for Mrs. Kohl's board and room.

The entire contents of the safe deposit box were listed in the inventory, and the question as to their ownership was raised by Mrs. Mullen's exceptions to the inventory, alleging that the corporate stock was given and delivered to her by the decedent prior to her death. In view of the evidence it is not apparent why she did not except to the inclusion of the bonds in the inventory.

At the hearing on these exceptions, only one witness, Blanche Shippert, a friend of Mrs. Mullen, testified as to what took place at the time the alleged gift was made. She testified on direct examination as follows:

"Q. Now directing your attention to September 28th, 1954, what were you doing that day? A. Dressing chickens out at Mrs. Mullens.

"Q. And what occurred that day? A. You mean in regard to Mrs. Kohl?

"Q. Yes. A. I had taken her lunch in, her meals were taken into her, had taken her tray in, after she had finished eating, I was going back after the tray, May said she would go, she did, soon after she went in there called and asked if I would come in. I went in Mrs. Kohl opened her drawer there was below a radio, had a little cabinet, took out keys and handed to May.

"Q. What did she do? A. She said she like me to be a witness that she was giving the keys to May to her safety deposit box, *like for her to have the contents.*

"Q. And did she then give the keys to Mrs. Mullen? A. She gave them to her.

"Q. Then did you know or see where Mrs. Mullen put them? A. Had a house dress on had a pocket, dropped in the

pocket, later on did put them on a piano bench, I told her better take care of them." (Italics supplied.)

On cross-examination, this witness was asked:

"Q. Now from the statement that Mrs. Kohl allegedly made in connection with the transfer of these keys, was the impression you had that she intended to make an immediate gift of the contents of that box, or were the contents of that box to be a gift of the contents at the time of her death, could you tell me from her conversation? A. Didn't mention when, *just said I want her to have it.*

"Q. And how many keys were given? A. Two.

"Q. Did you see there were two keys? A. Yes, one out of the drawer, then rummaged around and got the other one, they were not fastened together." (Italics supplied.)

The claim of ownership by Mrs. Mullen is based entirely upon the foregoing testimony. There is no other evidence in the record tending to prove Mrs. Kohl's intent to make a gift, or of a delivery of the subject matter of the gift.

The president of the First National Bank of Okeana testified that the safe deposit box originally was rented by Mrs. Kohl, her husband, and his brother, jointly. After the brother's death, Mrs. Kohl and her husband continued to rent the box jointly until the husband's death in June 1950, and thereafter it was continued in the name of Blanche T. Kohl. He testified that at no time did Mrs. Kohl ever come to the bank to seek access to box 41. Before her husband's death, he took care of that, and after his death Mrs. Mullen entered the box ten times as Mrs. Kohl's agent, each time bringing a note in Mrs. Kohl's handwriting and signed by Mrs. Kohl, requesting the bank to allow Mrs. Mullen to have access to the box. He testified also that Mrs. Mullen never attempted to obtain permission to enter the box without written authority from Mrs. Kohl, and the implication from his testimony is that had she so requested it would have been denied. He testified further that whoever sought entrance to the box was required to produce the renter's key, which would not itself unlock the box but would do so in combination with the master key, which was retained in possession of the bank.

Although Mrs. Mullen manifestly knew that the bank re-

quired written authority to enter this box, she never obtained such authority during the five months intervening between the time of the alleged gift and Mrs. Kohl's death, during most, if not all, of which time Mrs. Kohl was rational and capable of executing such an authorization. Nor did Mrs. Mullen at any time notify the First National Bank that she was the owner of the contents of the box.

There is no evidence or claim that Mrs. Mullen ever received any dividends on this stock. Beyond question, dividend checks would have been made payable to Mrs. Kohl. There is no evidence that Mrs. Mullen ever received any such checks either from the corporation or from Mrs. Kohl.

We start with the title to the contents of this box in Mrs. Kohl. She had both title and possession. Mrs. Mullen claims title and possession by *inter vivos* gift from Mrs. Kohl.

In *Flanders* v. *Blandy*, 45 Ohio St., 108, 113, 12 N. E., 321, the Supreme Court set forth the essential elements of such a gift in the following language:

"A gift *inter vivos* has been defined as an immediate, voluntary and gratuitous transfer of his personal property, by one to another. It is essential to its validity that the transfer be executed, for the reason that there being no consideration therefor, no action will lie to enforce it. A gift *inter vivos* has no reference to the future, but goes into immediate and absolute effect. To render the gift complete, there must be an actual delivery of the chattel, so far as the subject is capable of such a delivery, and without such a delivery the title does not pass. If the subject be not capable of actual delivery, there must be some act equivalent to it. 'The necessity of delivery,' says Chancellor Kent, 'has been maintained in every period of the English law.' The donor must part not only with possession, but with the dominion and control of the property. An intention to give is not a gift, and so long as the gift is left incomplete, a court of equity will not interfere and give effect to it."

Many later cases have approved the foregoing definition and applied it to a variety of circumstances. Now, applying it to the circumstances of this case, to what conclusion do we come?

In the first place, there must be an immediate transfer of

title. To accomplish such a transfer the evidence must show an intent so to do. Now, does the evidence disclose any such intent? We have quoted the testimony of the only witness to the transaction. On direct examination she testified that Mrs. Kohl said she wanted her to be a witness that "she was giving the keys to May to her safety deposit box" and would "like for her to have the contents." Thereupon, she delivered the keys to Mrs. Mullen to complete that part of her intent evidenced by the words, "she was giving the keys to May." But that act did not enlarge the intent of the words, "like for her to have the contents," which, it seems to us, cannot be construed into an intent to vest Mrs. Mullen at once with title to the contents. It is no more than the expression of a desire. If we were construing such language in a will, we might very well give effect to it as showing the wish or desire of the testator, but to serve the purpose of showing donative intent it would be necessary to construe the words to be a positive direction or command. We know of no authority for such a construction of an *inter vivos* transaction.

Some stress is laid on the fact that two keys to the box were given to Mrs. Mullen. They were duplicate keys and inferentially all the keys in the possession of Mrs. Kohl. But possession of both keys did not enable Mrs. Mullen to enter this box. It perhaps would have made it more difficult for Mrs. Kohl to have access to it in her lifetime. It might and probably would have required a drilling of the lock to enable Mrs. Kohl, or her representative after her death, to enter it. To avoid this inconvenience, recourse to Mrs. Mullen would have been required, and that was the only advantage to her conferred by possession of both keys. We see nothing in the incident indicating an intent by Mrs. Kohl to invest Mrs. Mullen immediately with title to and dominion over the contents of the box.

Now, was there a delivery of the contents of this box at any time? Was possession transferred to Mrs. Mullen? What is the evidence on that subject?

Certainly, the spoken words are no evidence of delivery. They show intent—mental attitude—and nothing more.

There was not manual delivery. The contents of the box remained undisturbed. Mrs. Kohl continued to have the same

complete possession and dominion after as before, unless the delivery of the keys had the effect of terminating her possession and dominion and of transferring such possession and dominion to Mrs. Mullen. But possession of both keys was no more effective to enable Mrs. Mullen to open the box than the possession of one only. Had Mrs. Kohl desired to open the box in her lifetime she would have been compelled to obtain one of the keys from Mrs. Mullen or resort to drilling the lock. Manifestly she would have resorted to the former alternative, just as her executor did after her death.

If the parties had considered that the intent had been to transfer title during Mrs. Kohl's lifetime, they had plenty of time to make such intent effective. Mrs. Kohl could have executed a power of attorney, as she had done on ten prior occasions, and Mrs. Mullen could have taken it to the bank and removed the contents. Mrs. Kohl could have endorsed the stock certificates, and new certificiates in Mrs. Mullen's name could have been obtained from the corporations. They had almost five months in which to do these things. Had they done so, no one could have doubted that complete dominion, control and title had been transferred. In view of these circumstances, it seems to us that it certainly does not appear that the claimant, Mrs. Mullen, has proved that there was an actual delivery so far as the subject was capable of delivery.

Perhaps the case relied on most strongly in support of Mrs Mullen's claim is that of *In re Estate of Stevenson*, 79 Ohio App., 315, 69 N. E. (2d), 426. A reading of the facts set forth in that case is necessary to show its dissimilarity to the case at bar. In that case, the claimant had been given access to a safe deposit box by the donor, and she had directed the donee "to get what was his out of her lock box." Furthermore, she had endorsed the certificates of stock and placed them in a sealed envelope found in the box, with the endorsement in her handwriting on it—"all of the contents of this envelope belong to Everett O. Newman," the donee, and this endorsement was signed by her. There were other indicia of the surrender of dominion and possession, but the foregoing is sufficient to show the striking difference between that case and the case at bar.

Appellee's counsel also quotes certain passages from the

opinion in *State, ex rel., Shaffer, Exrx.*, v. *Kuthy*, 47 Ohio Law Abs., 14, 71 N. E. (2d), 133. They are statements of general rules of law relating to gifts *inter vivos* to which all can agree, but they were applied to an entirely different set of facts. In that case, the certificates of stock were endorsed and actually delivered to the donee by the donor.

So, in *Polley et al., Admrs.*, v. *Hicks*, 58 Ohio St., 218, 50 N. E., 809, also relied on, the savings bank book was actually delivered to the donee with appropriate words of gift, and under the rules of the bank the deposit was payable to any one who presented the book and requested payment. No written authority from or endorsement by the depositor was required.

The only new feature in the case of *Streeper, Admr.*, v. *Myers*, 132 Ohio St., 322, 7 N. E. (2d), 554, relied on by appellee's counsel, is that the donor reserved the income from the corpus of the gift during his lifetime. The certificates had been specially endorsed to the donees, placed in envelopes, addressed to the donees and sealed and delivered to a third person as trustee for such donees, with instructions that if anything happened to him, that is, upon his death, the envelopes should be mailed to the addressees. The court held that the circumstances showed an intent to make gifts immediately, with a reservation of the income during life. We fail to see any similarity between that case and the case at bar.

*In re Estate of Bacon*, 20 Ohio Law Abs., 271, 32 N. E. (2d), 433, decided by this court, is also cited. However, the gifts were Liberty bonds in sealed envelopes, addressed to the donees and found in testator's safe deposit box after his death. There was in evidence declarations of the testator showing an intent to give, and on the Saturday before his death he had given the keys to his niece with instructions to go to the box, get the envelopes and mail them, but before she could carry out his instructions the testator had died. There is a dissenting opinion in which other important facts are disclosed, but, assuming the facts to be as set forth in the majority opinion, there can be no doubt that all the elements of a gift were present. The case, however, sheds no light on the path to a correct decision of the case at bar.

In *Bolles* v. *Toledo Trust Co., Exr.*, 132 Ohio St., 21, 4 N. E.

(2d), 917, the Supreme Court reversed the judgment of the Court of Appeals, affirming the judgment of the Common Pleas Court, and entered final judgment for the executor in an action in which the contents of a safe deposit box were the subject matter of the alleged gift from a husband to his wife. In that case, the evidence of intention to give was so overwhelming that the Supreme Court said, at page 30:

"* * * there can be little doubt that he intended his wife to have the securities and thought he had effectuated such desire, but we are equally satisfied that there is not that quantum of positive evidence to show necessary compliance with the mandates of the law respecting the consummation of a gift. In other words, the evidence as a whole does not present the clear and convincing details of a gift accomplished—a complete severance of the ties of ownership by the donor with absolute and irrevocable finality. It is essential to a gift *inter vivos* 'that there be such a change of possession as to put it out of the power of the giver to repossess himself of the thing given.' "

The safe deposit box in that case was at all times in the joint names of the husband and wife, each had a right of access to it, and the wife had exercised that right on at least two occasions, on one of which she had made a list of the securities and evaluated some as "good" and others as "doubtful." The securities were in an envelope, on the outside of which was the name or initials of the husband. Notwithstanding the husband's repeated declarations that the securities belonged to his wife, the Supreme Court gave weight to such evidence, and the facts that the securities were in the husband's name and the certificates unendorsed by him, that he collected the dividends and exercised certain dominion over them (although the evidence showed this was with the consent of the wife), and that the husband had access to the box caused the Supreme Court to conclude as set forth in the foregoing quotation from the opinion.

Our conclusion is that the record fails to show that degree of proof necessary to sustain a gift *inter vivos* both as to the intent to make a gift *in praesenti* and as to the transfer of complete dominion and control.

We, therefore, conclude that the Probate Court erred in

sustaining the exceptions to the inventory, and its action in so doing is hereby reversed, and the items involved are restored to the inventory as assets of the estate.

*Judgment reversed.*

HILDEBRANT, J., concurs.
ROSS, P. J., dissents.

(Decided June 6, 1956.)

ON APPLICATION for rehearing.

*Per Curiam.* This cause now comes before the court upon the motions of the appellee for a rehearing and for a remand to the trial court for a new trial.

In support of these motions, it is said that no motion for judgment was made by the appellants at the conclusion of all the evidence, and, therefore, the court did not rule upon the question and cannot be said to have erred in that respect. It is argued that, for that reason, this court can not in any event render final judgment. By interpreting the opinion herein as reversing the judgment of the Probate Court on the weight of the evidence, it is said that the jurisdiction of this court is limited to reversing the judgment and remanding the cause for a new trial.

Now, in our opinion, a motion for judgment at the close of the evidence was unnecessary and would have been superfluous. The cases relied on are cases in which the trial court had not been called upon in any way to pass upon the question urged on appeal. They were actions at law or suits in equity, whereas this is a special proceeding.

In this case, there was only one question. The executors had included these stocks in the inventory. By so doing, they asserted they were assets of the estate. The appellee, by her exceptions, disputed that assertion. That was the issue submitted to the Probate Court. The inventory and exceptions presented that issue. The court decided that issue. This court certainly had jurisdiction to review that decision, notwithstanding no motion was made by either of the parties.

Having authority to review, the court had jurisdiction to reverse. Then the only question remaining is whether the cause should have been remanded for a new trial.

The appellee misinterprets the opinion herein. The language used is a paraphrase of the language of the Supreme Court of Ohio in *Bolles* v. *Toledo Trust Co., Exr.*, 132 Ohio St., 21, 4 N. E. (2d), 917, in which it reversed and entered final judgment. At page 30 it said: "But we are equally satisfied that there is not that quantum of positive evidence to show necessary compliance with the mandates of the law respecting the consummation of a gift. In other words, the evidence as a whole does not present the clear and convincing details of a gift accomplished—a complete severance of the ties of ownership by the donor with absolute and irrevocable finality." The court then directed that final judgment should be entered. That was the meaning intended by the different words used in the opinion herein.

Shortly after the Supreme Court had handed down its decision, the appellee filed a lengthy motion to modify the judgment and an application for a rehearing on the identical grounds urged by the appellee in this case. In the motion the appellee said: "In the absence of a jury, to raise this question it was necessary for the defendant executor to demur to the evidence and request the court to enter judgment in its favor at the close of all the testimony. But this was not done then or at the close of the plaintiff's case." And, also, it was said therein: "Since the trial court was not asked to do the equivalent of directing a verdict for the defendants, and was not in the motion for a new trial asked to enter judgment for the defendants, it had no right to do so, committed no error in not doing so * * *."

In the opposing brief, it was pointed out that a hearing on exceptions to an inventory in the Probate Court was a special proceeding, to which the rules of the Code of Civil Procedure had no application, and that, where it affirmatively appears on the record that a final judgment should be rendered for one or the other of the parties, it should be so rendered.

The subsequent history of the Bolles litigation makes clear that this question was not an inadvertence on the part of the

Supreme Court. In *Bolles* v. *Toledo Trust Co., Exr.,* 136 Ohio St., 517, 27 N. E. (2d), 145, the court decided that the judgment on the exceptions to the inventory (132 Ohio St., 21) was *res judicata* and estopped the widow from claiming the same property as beneficiary of a trust, but in 144 Ohio St., 195, 58 N. E. (2d), 381, 157 A. L. R., 1164, the court held that it did not estop her from claiming her distributive share upon her election not to take under the will.

In the case at bar, it affirmatively appears from the undisputed facts that appellants are entitled to final judgment. We are of the opinion that the proceeding authorized by Section 2115.16, Revised Code, providing for exceptions to an inventory, is special, and that the rules regulating actions at law and suits in equity are inapplicable.

For these reasons, the motions are overruled and final judgment is entered for the appellants.

*Judgment accordingly.*

HILDEBRANT and MATTHEWS, JJ., concur.