**BEACH, Guardian, In re, Plaintiff-Appellant, v. BAKER et, Defendants-Appellees.**

Ohio Appeals, Eighth District, Cuyahoga County.

No. 24480.   Decided June 26, 1958.

Beach & Warner, George E. Beach, of Counsel, for plaintiff-appellant.
Lawrence E. Stewart, Peter Onysko, for defendants-appellees.

## OPINION

By SKEEL, PJ.

This appeal comes to this court on questions of law from a judgment entered by the Probate Court of Cuyahoga County against the plaintiff on his petition seeking a declaratory judgment. This action for declaratory judgment was commenced by the plaintiff as guardian of John Burger, the appointment having been made by the Probate Court of Cuyahoga County on May 11, 1956. The application alleged that John Burger was an incompetent person by reason of advanced age, or mental or physical disability or infirmity. The petition is concerned with the right of the defendants to certain money paid to them by John Burger for services rendered for his care. While the case was pending, the defendant, Clarence M. Baker, died on December 1, 1955, and the plaintiff's ward John Burger, died on January 16, 1957. The court, upon the supplemental petition of the plaintiff, revived the action in the name of George E. Beach, as Executor of the Estate of John Burger. and also revived the action against Bertha M. Baker, as Executrix of the Estate of Clarence A. Baker.

John Burger, at the time of the filing of this petition on July 23, 1956, was a widower of eighty-six years. He was a retired railroad engineer of the Baltimore and Ohio Railroad Company, and was receiving therefrom a pension of $135.94 per month. His second wife, to whom he was

married in 1941, died on October 2, 1954. He lived in his own home on Westwood Drive, Strongsville, Ohio. He had a savings account in The Commercial and Savings Bank of Berea, Ohio (now consolidated with the Union Bank of Commerce of Cleveland), with a balance, prior to the withdrawals here considered, of $5291.07.

William E. Burger, son and only child of John Burger, lived in Chicago, Illinois, with his family. He had been a resident of that city since 1922 and was engaged in building construction. Clarence A. and Bertha M. Baker, husband and wife, lived the second door from John Burger on Westwood Drive in Strongsville.

The plaintiff's petition alleges that on May 11, 1956, he was appointed and is now the qualified and acting guardian of the person and estate of John Burger, Incompetent; that John Burger was found mentally ill by the Probate Court of Cuyahoga County as charged in a lunacy proceeding filed May 8, 1956. In such proceeding John Burger was committed to a State Hospital (Hawthornden) on May 10, 1956.

The plaintiff's petition further alleges that the defendant, William E. Burger, was the sole child of said ward and the only person entitled to the next estate of inheritance from him and as a person so interested, had, in writing, pursuant to §2107.46 R. C., requested this guardian to institute this proceeding for "his guidance the direction or judgment of this court on the matters herein set forth." The petition then sets forth the facts above set out concerning John Burger, his advanced age, that he is a widower, his pension income, his savings bank deposit, the relationship of William E. Burger, and that William E. Burger visited the said ward from time to time and that as time passed, the "said ward's physical and mental vigor gradually ebbed to the extent that in the fall of the year, 1955, his son, defendant, William E. Burger, made inquiries from time to time of neighbors, including defendants, Baker, herein, who had been volunteering to, and did, look in upon, and do some services for, his father occasionally, but with increasing frequency, as to whether they had been sufficiently paid therefor, or, as to what their demands were, if any, and even wrote them several letters about it but his inquiries were at different times responded to by defendants, Baker, either in the negative, or evasively, but concluding on October 31, 1955, wherein it was stated, inter alia, by said Bakers to said William E. Burger, in writing: 'We (Bakers) do have an understanding with him (John Burger),' but did not reveal what it was though defendants, Baker, were, the while handling said ward's pension money and paying certain bills therefrom."

The petition further alleges that defendant, Clarence A. Baker, without giving notice to William E. Burger, attempted to have himself appointed guardian of John Burger by application filed in the Probate Court of Cuyahoga County on December 29, 1955, asserting that he (Burger) was mentally ill and incompetent, but that such application was dismissed on January 26, 1956, by the applicant because William E. Burger, who accidentally received notice of the proceeding, appeared at the hearing. (The application, which is Joint Exhibit No. 1) alleges that "John Burger is incompetent by reason of advanced age, physical

disability and infirmity and by reason thereof is incapable of taking proper care of himself or of his property." No mention is made of plaintiff's allegation that the application claims Burger to be then "mentally ill."

The petition then alleges that in the meantime and without the knowledge of William E. Burger, there was withdraw from the ward's savings account $3400 on January 16, 1956 and $350.00 on March 9, 1956, which sums were "appropriated in their entirety" by the Bakers.

The petition then asks the determination of the following questions so that plaintiff, as executor, may proceed safely in the premises:

"1. Whether defendants, Baker, have the right to retain, all, or any part, of either or both of the items of $3,400.00 and $350.00, aforesaid.

"2. Whether he should pay to defendants, Baker, the additional $150.00, aforesaid, demanded by them from the estate of his ward.

"3. If defendants, Baker, be required to account for and return all or part of the items of $3,400.00 and $350.00, aforesaid, do said items draw interest, or penalty?

"4. Do defendants, Baker, owe duty to account fully for disposition of all funds received by them from John Burger including also his monthly pension?"

By answer, it is alleged, in addition to admitting the record of plaintiff's appointment as guardian, and other matters of record, that the money paid to the defendants was in payment for the amount due under a contractual agreement for services performed at fifty dollars per week. It is further alleged that John Burger was fully competent to contract when the agreement was made and when the money was paid.

The pertinent evidence, in brief, on the issues as submitted by the parties and admitted into the record by the court over objections of the opposite party, was to the following effect: The plaintiff called as his witness the defendant, William E. Burger (a party defendant in the action) who testified that after his stepmother died on October 2, 1954, he wrote a letter to the Bakers, dated October 13, 1954, in which he stated: "As was explained to you over the telephone, it is my utmost wish that he (John Burger) have whatever comfort you may be able to help him with. If at any time you receive compensation from him, kindly accept it at face value and if in your opinion, it is inadequate, kindly let me know and I will supplement it to whatever extent suits you. If he does not offer you money, please feel free to let me know and I will see that you are adequately compensated." (Plaintiff's Exhibit C.)

And again, October 26, 1955, William E. Burger wrote: "Since my visit to Strongsville in August, at which time I asked you to send to me an account of whatever might be due you by my father, I have not heard from you in this connection; consequently, I am assuming that you are adequately being paid regularly from time to time for whatever services you are performing for him." (Plaintiff's Exhibit F.)

An answer to this letter from the Bakers was put in evidence (Plaintiff's Exhibit G) which stated: "Answering your recent letter, wish to say we are not being paid in cash for our services to your father. We

do have an understanding with him that we will be taken care of in the future. We are keeping an account of meals and all other work we do on his place."

This witness also testified that at least until April 1956 his father was mentally competent to take care of his own affairs. He testified as follows:

"Q. And you knew that your father couldn't care for his own property, meaning the house, he couldn't take care of repairs or things of that nature, could he?

"A. That was on account of a physical condition.

"Q. Yes, physically he couldn't take care of them.

"A. That's right.

"Q. You are not contending at all that there was anything wrong with him mentally?

"A. No.

"Q. He was mentally alert?

"A. Yes.

"Q. As a matter of fact, you didn't notice anything wrong with his mentality until, as you said in the report, about April of '56, isn't that true?

"A. That's right.

"Q. So during this entire period of time, this entire transaction, up until about April of '56 was the first that you had noticed that anything outwardly appeared mentally concerning the man, correct?

"A. Yes."

The plaintiff must also have considered John Burger of sound mind and memory during this period because his evidence shows that he drafted and witnessed John Burger's will on December 22, 1955, and on the following day, accepted a deed to himself from John Burger of his real property in Strongsville.

There is no dispute in the evidence but that John Burger withdrew from his savings account in The Commercial and Savings Bank of Berea the sum of $3400.00 and $350.00 and that this money was given to Clarence A. Baker and Bertha M. Baker who accompanied him to the bank on both occasions as payment for their services.

The plaintiff's witness (the bank employee who paid out the money) testified on direct examination as to the first withdrawal as follows:

"A. It was in the morning and Mr. Baker came in with Mr. Burger and came to my desk. I was sitting at my desk at that time. I wasn't at the window. And he came to my desk and I asked him to come in and they came in and sat down and Mr. Baker said, 'Mr. Sanderson, Mr. Burger wants to draw some money off his account and is going to pay me for services that Mrs. Baker and I rendered to him for the past few years taking care of him,' and he handed me the book and I said, 'How much do you want to draw?,' and he told me."

Bertha M. Baker testified over plaintiff's objection that there was an agreement between the Bakers and John Burger to pay them, the Bakers, fifty dollars a week for taking care of him. The record shows the following:

"Q. All right. Now, you indicated in this letter on October 31, 1955, that you are not being paid in cash, but you had an understanding with him that you would be taken care of in the future. Will you tell us concerning that arrangement?

"MR. BEACH: Object.

"THE COURT: Overrule the objection.

"MR. BEACH: Exception.

"A. Well, he talked to Mr. Baker and he said 'If you folks will continue on taking care of me and bringing my meals and tending to things,' he said, 'I'll give you $50.00 a week,' and Mr. Baker came home and talked it over with me and well, we thought he was so near, Mr. Baker was so near retirement and that, he would want to pay us every week or so, and we said we would rather have it in a lump later on whenever it accumulated a little bit.

"MR. BEACH: I want to move that the answer be stricken, Your Honor, along with the other objection I had we will note that she says that Mr. Burger said something to Mr. Baker when she was not present and Mr. Baker, now deceased, came and told her about it and then they decided to do it.

"THE COURT: She is attempting to interpret the language—

"MR. STEWART: That's correct, Your Honor, which was introduced.

"THE COURT: I will overrule the objection.

"MR BEACH: Exception."

There is no dispute in the record but that the Bakers rendered care and assistance to John Burger of a necessary and material nature for his well-being from the date his wife died until about the time he was sent to a rest home—a period of seventy-five weeks—and that at $50.00 per week, there would be due for such period of service $3750.00, the exact amount paid to the date of the last payment.

From the judgment of the Probate Court holding that the $3750.00 paid to the Bakers was their property and further that they owed no obligation to account for the pension funds of John Burger, handled by them, the plaintiff claims the following errors:

"1. The judgment of the trial court is manifestly against the conceded, stipulated and uncontroverted evidence.

"2. The judgment of the trial court is contrary to law, among others, in the following respects:

(a) In prejudicially drawing erroneous conclusions of law from the undisputed facts.

(b) In rendering judgment in favor of defendants, Bakers, and against plaintiff.

(c) In admitting the testimony of Bertha M. Baker against John Burger's executor—§2317.03 R. C.

(d) In prejudicially failing to hold that the transactions involved were invalidated by §2111.04 R. C.

(e) In prejudicially failing to hold defendants, Baker, liable as constructive guardians or constructive trustees."

It must be said at the very outset that unless John Burger has been shown by the plaintiff to have been non compos mentis prior to April,

1956, any contracts or agreement entered into and performed by him before that time cannot be the concern of either his guardian thereafter appointed or his executor. The evidence in this case is clear that John Burger has sufficient assets to take care of himself and so long as he had mental capacity to understand what he was doing, his son could not interfere with his father's financial affairs and owed no legal responsibility for his support. From the evidence as herein detailed and as unequivocally supported by other witnesses, John Burger was capable of making and legally responsible for his contracts during the period when he paid the defendants $3750.00 for personal services rendered by the Bakers which were necessary for his well-being.

The question here then is as to the terms of the contract and upon whom lies the burden of proof. There is no issue but that services were rendered for John Burger and that some compensation was rightfully due for such services. There is also no dispute but that $3750.00 was paid for such services. The plaintiff's evidence, the allegations of the petition and other evidence, clearly establish this fact. An executed contract, whether express or implied (so far as the defendants are concerned), is therefore presented. If the plaintiff would challenge the amount received by the defendants by virtue of such contractual relations, the burden is upon him to show either that the amount received was in excess of the terms of the contract, if based on an express contract, or if based on implied contract, that the amount paid exceeded the reasonable value of the services rendered. The plaintiff has not attempted to refute an express contract or to show over-payment of an implied contract so that the trial court's judgment on the principal question must be sustained.

The claim that §2111.04 R. C., as then constituted, prevented John Burger from paying a debt created on account of rendering personal services through a long period of time before the application for guardianship was filed, cannot be sustained. The section, in part, provides:

"No guardian of the person, the estate, or both shall be appointed until at least three days after the probate court has caused written notice, setting forth the time and place of the hearing, to be served upon the following persons:

"* * *

"Such notice shall be served by delivering a copy to each person named therein, by leaving such copy at his usual place of residence, or by sending such copy by registered mail to his last known address, except that when required by this section, personal service of such notice shall be made on the person for whom such appointment is sought. Such notice may be waived in writing by all competent persons except the person for whom such appointment is sought.

"From the service of such notice until the hearing no sale, gift, conveyance, or encumbrance of the property of such incompetent, habitual drunkard, idiot, imbecile, lunatic, or confined person shall be valid as to all persons having notice of such proceeding."

This section is not applicable to the facts of this case. The pay-

ment of a debt is not a sale, gift, conveyance or incumbrance. **In re Estate of Stevenson, 79 Oh Ap 315, 69 N. E. 2d 426; Brockway v. Jewell, 52 Oh St 187, 39 N. E. 470.** Also, it is not clear from the record whether an application for a guardian was pending when the first payment was made on January 16, 1956. Certainly, no such application was pending on March 9, 1956.

The appellant complains that Bertha M. Baker, being a party to the action, was not eligible as a witness to testify by reason of the provisions of §2317.03 R. C., the plaintiff being at first the guardian and then the executor of the estate of John Burger, now deceased.

Sec. 2317.03 R. C., provides, in part:

"A party shall not testify when the adverse party is the guardian or trustee of either a deaf and dumb or an insane person or of a child of a deceased person or is an executor or administrator, * * * except:

"* * *

"(C) If a party, or one having a direct interest, testifies to transactions or conversations with another party, the latter may testify as to the same transactions or conversations;"

Here the plaintiff introduced in support of his case the letter of Bertha M. Baker, above quoted, in reply to a letter of the defendant, William E. Burger, an interested party, which was presented and received in evidence on behalf of the plaintiff, wherein she stated that they (Clarence A. Baker and Bertha M. Baker) have an agreement with John Burger for compensation as a result of their personal services to him. This evidence involved the very transaction about which the plaintiff seeks instruction and by presenting such evidence, opened the door for the defendants, Baker, to testify on the same subject as provided by §2317.03, paragraph (C), R. C., which was above quoted. See **Rankin v. Hannan, 38 Oh St 438,** where it was held that if an administrator testifies to a conversation between his intestate and the opposite party, the latter may testify as to the same subject. Also, see Williams v. Longley, Admr., 3 C. C. 508, where the court held that a party having a direct interest in the event testified to concerning transactions between decedent and the adverse party, such adverse party may testify to the same transaction.

It is also doubtful whether the defendant was required to produce evidence to support the judgment. The sufficiency of the petition, in stating a cause of action, was challenged by demurrer which was overruled by the trial court. This ruling has not been appealed by the defendants, Baker, either by direct or cross appeal so that the question has not been called to our attention. Even if we concede that the petition does state a cause of action, which is open to considerable doubt, the evidence of the plaintiff falls far short of sustaining the right to a declaratory judgment upon the facts pleaded. The evidence establishes no controversy involving a relationship or the meaning of a contract or other controversy coming within the provisions of the Declaratory Judgment Statutes. If anything, it is a suit for money only.

In the case of **Ohio Farmers Ins. Co. v. Heisel, 143 Oh St 519, 56 N. E. 2d 151,** an action was filed seeking a declaratory judgment to determine

whether an accident experienced by the son of the insured while operating the insured vehicle of his father came within the terms of the policy which, upon the face of the petition, required only a determination of fact. The defendant demurred to the petition on the ground that it did not state a cause of action, which demurrer was sustained by the trial court and which judgment was entered after the plaintiff refused to plead further. Such judgment was affirmed by the Supreme Court. The third paragraph of the syllabus provides:

"3. An insurer may not obtain a declaratory judgment with reference to its insurance policy when no question of construction or validity thereof is raised."

And on page 522, the court said:

"Are these plaintiffs asking to 'have determined any question of construction or validity arising under the * * * contract' of insurance? Of course the demurrer admits the plaintiffs' well-pleaded allegations, but in the petition there is not even a suggestion of any question of 'construction or validity' of the policy. The plaintiffs allege that they insured 'any person while using the automobile and any person or organization legally responsible for the use thereof * * * provided further the actual use is with the permission of the named insured.' This the demurrer admits. Neither the meaning nor the validity is challenged. What, then, is the question the plaintiffs want to have decided at this time in the form of a declaratory judgment? According to the petition, the single issue presented is a question not of 'construction or validity' but merely of fact as to whether at the time of the collision the automobile was being driven with the permission of the insured."

The character of the action before us, as indicated by the pleadings and evidence, is one for money only. The material allegations of the petition are admitted by the answers of the Bakers, as is above set out. The facts pleaded as the basis of compensation for services took place during the lifetime of John Burger. The only justiciable issue is as to whether or not the estate is entitled to the return of a part of the money paid to the Bakers by John Burger. Such an issue, not being the subject of an action for a declaratory judgment, is not within the jurisdiction of the Probate Court.

In the case of **Sherrets, Admr. v. Tuscarawas Savings & Loan Co., 78 Oh Ap 307, 70 N. E. 2d 127,** the administrator filed a petition in the Probate Court seeking a declaration of her rights to certain corporate stock. The action was based on contract but the terms of the contract were not in issue. The court said in the syllabus:

"1. The power of a court to render a declaratory judgment by virtue of provisions of the Uniform Declaratory Judgments Act does not empower the court to expand its jurisdiction over subject matter.

"2. The jurisdiction of actions at law and suits in equity seeking to enforce oral contracts or to set aside such contracts in equity for fraud practiced and to recover back any consideration paid is reposed solely in the Court of Common Pleas to the complete exclusion of the Probate Court.

"3. Where the administratrix of an estate files an action in the

Probate Court of a county against a savings and loan company, a resident of such county, and the receiver of a park association, a nonresident of such county, the petition in the action charging fraud in the decedent's oral transaction with the park association and seeking a declaration of rights to a certain stock certificate of the company alleged to have been given by the deceased to the association as consideration in such transaction, an order of dismissal of the petition is justifiable, the court having no jurisdiction of the subject matter of the action and there being an improper joinder of parties defendant."

And on page 313, the court said:

"It must be remembered that the entire transaction of which plaintiff · complains occurred prior to the death of her decedent. It is not a case of someone withholding an asset of the estate under a claim of gift or ownership from an estate's personal representative; but a fully executed transaction whereby decedent parted with title and possession in her lifetime. All the administratrix of her estate had was a right of action to recover property or its money value. It is exactly in the same situation as a promissory note due the estate, or an action for personal injury to the decedent's person or property, or property withheld which could only be recovered by an action in replevin."

We have not spoken of the claim of the plaintiff seeking an accounting of funds received and handled by defendants, Baker, coming from John Burger's pension checks. There is no evidence in the record to support this claim and even if there were, it could not be recovered in an action for declaratory judgment for the reasons herein set forth.

For the foregoing reasons, the judgment of the trial court is affirmed.

HURD and KOVACHY, JJ, concur.